Filed 8/10/16  Marriage of Quan CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re Marriage of BENJAMIN HOA AND DORCAS SUN QUAN. <br><br> BENJAMIN HOA QUAN, <br><br>    Appellant, <br><br> v. <br><br> DORCAS SUN QUAN, <br><br>    Respondent. | E064202 <br><br> (Super.Ct.No. FAMSS1205174) <br><br> OPINION |

APPEAL from the Superior Court of San Bernardino County.  Arthur Harrison, Judge.  Affirmed.

Benjamin Hoa Quan, in pro. per., for Appellant.

Dorcas Sun Quan, in pro. per., for Respondent.

1

Benjamin Hoa Quan (Husband) appeals a postjudgment order of the superior court refusing to modify or terminate an equalization award of $10,000 and modifying a monthly spousal support award from $1,000 to $750 following dissolution of his marriage to Dorcas Sun Quan (Wife).[1]  (Fam. Code, §§ 2550, 2601, 4320, 4330.) Husband requests relief on the ground his assets and monthly income, as disclosed in his financial declaration and an expert report ordered by the superior court under Evidence Code section 730, were too low to support the awards.

We affirm.

# I

## FACTUAL BACKGROUND

On February 10, 2014, the San Bernardino County Superior Court held a hearing concerning the dissolution of the Quans' 23 and one-half years' marriage.  The superior court granted a decree of dissolution, awarded two marital businesses to Husband, and ordered him to make an equalization payment of $10,000 to Wife.  The superior court also ordered spousal support in the amount of $1,000 a month beginning April 1, 2014. The superior court entered judgment terminating the marriage on January 7, 2015.

Before judgment issued, Husband sought modification of both the equalization award and the spousal support award in the superior court.  On June 5, 2014, the superior court confirmed its findings at the February 10, 2014 hearing and ordered "[a]ll existing

---

[1]  The parties represent themselves on appeal.

2

orders shall remain in full force and effect." However, the superior court indicated it "may reconsider orders if and after a[n] E[vidence] C[ode section] 730 financial evaluation has been completed." Evidence Code section 730 permits the court "on its own motion or on motion of any party" to "appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required." On September 3, 2014, the superior court appointed an expert to prepare a financial report and ordered Husband "to report alleged addition[al] income from petitioner to evaluator."

On January 16, 2014, the appointed expert, CPA Forensics Plus, LLP, submitted to the parties a draft valuation and cash flow report "to determine the separate/community value of the businesses known as Benco Insurance and Mission Realty and the current cash flow." "Benco is a small insurance business and Mission Realty is a property management/real estate business." Husband was the sole proprietor of both businesses. At the time of valuation, Husband was the only employee of the businesses. However, Wife testified she worked at the businesses until 2010. On value and cash flow, the report concluded: "The annual current cash flow for Benco Insurance is **$17,407** and the current monthly cash flow for Benco Insurance is **$1,451**. The value of Benco Insurance at 12/31/2014 is **$41,449**. [¶] The annual current cash flow for Mission Realty is **$4,181** and the current monthly cash flow for Mission Realty is **$348**. The value of Mission Realty [at] 12/31/2014 is **$6,893**."

3

The parties contested whether Benco Insurance began operation before or after their marriage. Husband represented to CPA Forensics Plus, LLC, that he started the business before the marriage. Wife testified: "We were married in 1983 and . . . in 1983 Benco Insurance had not been started. At that time Benjamin Quan worked with Farmers' Insurance. . . . [¶] I think Benco Insurance was begun around 1990."

On July 29, 2015, Husband filed an income and expense declaration. The declaration states Husband has $4,000 in bank accounts, $300 in personal property, and a $3,000 average monthly income from Mission Realty and Benco Insurance. The declaration also states Husband has $2,390 in total monthly expenses and owes $7,619 in debts and installment payments.

On July 31, 2015, the superior court held a hearing to consider Husband's request to modify the equalization and support awards. Husband relied on the expert financial report and his own declaration. Wife presented evidence Husband's income and expense declaration omitted assets. She testified Husband owns a commercial building and has proceeds from the sale of real estate that he deposited in a business account. Other evidence at the hearing confirmed Wife's testimony. Husband admitted to owning a commercial building and testified he had purchased it for approximately $78,000 twenty

4

years earlier.[2] The expert financial report states "deposits in accounts [of Benco Insurance] were higher than reported income (Exhibit 9). Limited detail was provided for deposits but we were able to identify some large deposits as proceeds from sales of real estate (personal) and transfers from personal bank account." Wife directed the court's attention to the exhibit mentioned in the report. She testified: "[E]xhibit 9 in the [expert report] . . . is very clear. In 2012 from January to December the total amount that Mr. Quan input into his Benco Insurance Services account, $105,832. In 2013 he submitted over $71,000. I can explain it for him. Yes, we sold properties because the total amount for the sale of the house—the properties did not exceed $100,000. So in here it says for at least $70,000 is unidentified deposits."[3]

After hearing evidence and argument, the superior court confirmed its judgment with respect to the division of the marital property. The court directed that "the business has to remain Mr. Quan's" and found "[$]10,000 is appropriate" as an equalization

---

[2] Husband and Wife contest the value on the property. Husband contends it is worth $18,000 and Wife contends it is worth about $93,000. In either event, it is an asset not disclosed on Husband's income and expense report.

[3] Exhibit 9 is not part of the record of appeal, though it was submitted separately into evidence at the July 31, 2015 hearing. Consequently, we have only the summary of its contents in the expert financial report and in Wife's testimony. At the hearing, Husband attempted to explain the deposits as representing rent money his real estate company received from renters for payment to property owners, not his own assets. However, this testimony concerned exhibit 12 to the expert financial report (also not in the record on appeal) and exhibit 9 concerned funds in the account of Husband's insurance business, not his real estate business.

payment to Wife. The superior court found "[t]he sole proprietorship was conducted—actually commenced during marriage. The building of the business is a community asset and the Court has information before it today that when you tally both businesses it's in excess of [$]40,000. Some of that has been subsequent to separation and the Court will leave the equalization payment at [$]10,000."

The superior court decided to modify the spousal support award from $1,000 a month to $750 a month. The court noted it had considered the Family Code section 4320 factors and made the following findings: "I think some support is necessary. This is a long term marriage, 23 years and something. I recall 23 years and six months. The marketable skills and assets of Mrs. Quan are limited. She utilizes the services of an interpreter to a great extent. She does have an ability to converse in English to a limited extent and that limits job opportunities to a great extent. [¶] Mr. Quan's income. The [Evidence Code section] 730 Evaluation provides some insight into that. I don't believe it's complete by any means and it does indeed have assets that were neglected to be listed on his Income and Expense Declaration including his vehicle, his commercial building, and including the businesses are not listed on that, however, they have been addressed separately with the [Evidence Code section] 730 Evaluation. [¶] The Court had selected [$]1,000 primarily because it had been an actual failure by Mr. Quan by documentation for the Court to set a realistic income, and the Court simply imputed some money. I think there is an ability and I think there may be—it's going to be the parties are going to set spousal support at [$]750 per month at this point."

Husband timely appealed the superior court order under Code of Civil Procedure section 904.1, subdivision (a)(2).  Wife did not appeal the order.

## II

## DISCUSSION

A.  *Modification of Equalization Award*

Husband asks us to undertake an independent review of the superior court order and "to eliminate or reduce . . . the equalization payment" of $10,000 to Wife as her portion of the marital businesses.[4]

Orders calculating and determining a division of community property are reviewed under the substantial evidence standard.  (*In re Marriage of Zaentz* (1990) 218 Cal.App.3d 154, 162.)  "We view the evidence in a light most favorable to respondent, according the benefit of every reasonable inference and resolving all conflicts in favor of the judgment below."  (*Id.* at pp. 162-163.)  We will affirm the judgment if there is any substantial evidence, contradicted or uncontradicted, which supports the court's finding.  (*Pusateri v. E. F. Hutton & Co.* (1986) 180 Cal.App.3d 247, 250.)  We do not reweigh the evidence on appeal and the appellant cannot reargue those factual issues decided against it at the trial court.  (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 398-399,

[4] Husband asks us to take judicial notice of certain Social Security Administration records and Wife asks us to take judicial notice of records from the San Bernardino County Tax Collector and certain bank statements from an account of Benco Insurance. We decline to take judicial notice of the submitted materials, which, in any event, would not alter our decision.  (Evid. Code, § 452, subd. (h).)

7

overruled on other grounds in *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574.)

An appellant challenging the sufficiency of the evidence has the burden to demonstrate

the order is not supported. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)

The same standards apply where the appellant represents himself on appeal. (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 522-523.)

Here, the superior court found the "sole proprietorship . . . commenced during marriage . . . [and] [t]he building of the business is a community asset." It also found "when you tally both businesses [the value is] in excess of [$]40,000" that some of the value "has been subsequent to separation." We cannot disturb these findings because they are based on substantial evidence. First, Wife testified that both businesses started after the marriage. Though Husband contended he started Benco Insurance prior to the marriage, the testimony of a single witness is sufficient to support a judgment or finding, unless the testimony is physically impossible or its falsity is apparent without resorting to inferences or deductions. (*Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1075.) Second, the expert financial analysis of the value and cash flow of the businesses, which Husband presented to the superior court, concluded "[t]he value of Benco Insurance at 12/31/2014 is **$41,449** . . . [and] [t]he value of Mission Realty [at] 12/31/2014 is **$6,893**." Thus, the superior court could reasonably conclude the businesses were valued in excess of $40,000 and that their value until separation

8

constituted a community asset subject to division.  The equalization award of $10,000

gave Wife less than 25 percent of the value of the businesses as of December 31, 2014.**5**

We cannot, in the face of this evidence, conclude Husband is entitled to a reduction in the

amount of the equalization payment.**6**

Husband contends we should reverse the superior court order on the equalization

award on the additional grounds that the court:  (1) "either did not have the CPA Forensic

report in the court file or he did not have sufficient time to review and/or read through the

report," and (2) became "distracted [by] the [Wife's] many unrelated questions and/or

actions with a possibility of not enough focus on the [Evidence Code section] 730

Evaluation."  These are not grounds for reversing the superior court's order.  The record

establishes both that the superior court reviewed the expert financial report and that it

based its equalization order on the contents of the report.  Those facts also demonstrate

the superior court was not distracted from the relevant evidence contained in the report by

irrelevant issues raised during the hearing.**7**  To the extent Husband means to contend the

---

**5**  Husband contends there were "misstatements and/or misrepresentation(s)" made concerning the equalization payment called for under a contested settlement between the parties.  However, when the superior court said the property settlement "called for an equalization payment of [$]20,000 to Mrs. Quan," Husband's counsel said, "I believe [$]10,000, Your Honor," and Wife agreed.

**6** Wife did not appeal the equalization award, so we do not consider whether the superior court set the award too low.

**7** We granted Husband's motion to submit a letter brief in lieu of oral argument. There, Husband indicates he is "willing to pay the $10,000 equalization amount" in five

*[footnote continued on next page]*

9

trial court missed relevant evidence other than the evidence it noted at the hearing, he has not identified any such omissions, and therefore has failed to meet his burden on appeal.[8] (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700.)

B. *Modification of Spousal Support Award*

Husband also asks us to undertake an independent review of the superior court order and "to eliminate or reduce the amount of spousal support" he must pay to Wife on a monthly basis. Again, our review is more limited.

"The trial court has broad discretion to decide whether to modify a spousal support order. [Citation.]" (*In re Marriage of Tydlaska* (2003) 114 Cal.App.4th 572, 575.) "'[T]he ultimate decision as to amount and duration of spousal support rests within its broad discretion.'" (*In re Marriage of Left* (2012) 208 Cal.App.4th 1137, 1150.) "A trial court considering whether to modify a spousal support order considers the same criteria set forth in Family Code section 4320 as it considered in making the initial order." (*In re Marriage of West* (2007) 152 Cal.App.4th 240, 247.)

---

*[footnote continued from previous page]*
equal installments over 12 months. To the extent Husband is asking us to approve his proposed payment plan, we decline. It is not our role to determine how judgments are satisfied.

[8] In his letter brief, Husband contends the expert financial analyst submitted a revised report modifying its evaluation of the businesses to $33,078. However, the revised report is not part of the record on appeal. Even if we credited the revised value, the equalization award of $10,000 gave Wife less than one-third the value of the businesses, which does not warrant reversal in Husband's favor.

We review the superior court's exercise of discretion in modifying spousal support for abuse of discretion. "'An abuse of discretion occurs "where, considering all the relevant circumstances, the court has exceeded the bounds of reason or it can fairly be said that no judge would reasonably make the same order under the same circumstances." [Citation.]' [Citation.] We '"must accept as true all evidence tending to establish the correctness of the trial judge's findings, resolving all conflicts in the evidence in favor of the prevailing party and indulging in all legitimate and reasonable inferences to uphold the judgment."'[9] [Citation.]" (*In re Marriage of Bower* (2002) 96 Cal.App.4th 893, 899.) The superior court "does not have discretion to ignore any relevant circumstance enumerated in the statute. To the contrary, the trial judge must both recognize and *apply* each applicable statutory factor in setting spousal support." (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 304.)

Here, the superior court did not abuse its discretion in awarding $750 in monthly spousal support to Wife. The superior court considered the relevant factors affecting spousal support. The factors relevant to a decision whether to modify spousal support are "the ability of the supporting party to pay; the needs of each party based on the standard of living established during the marriage; the obligations and assets of each party; and the

---

[9] In his letter brief, Husband requests that we "modify the spousal support amount to the $300's range or lower with the same retroactive date." We decline to do so. Our role is to determine whether the superior court abused its discretion in setting the spousal support amount, not to substitute our own judgment.

balance of hardships to each party." (*In re Marriage of Bower*, *supra*, 96 Cal.App.4th at p. 899.) The superior court determined the parties could not sustain separately the standard of living during the marriage. The court reasonably found Wife needed spousal support based on her limited employment opportunities due to her problems communicating in English.

The superior court's conclusion Husband could afford to pay $750 a month in spousal support is also supported by substantial evidence under the Family Code section 4320 factors. Husband's income and expense declaration states he receives an average income of $3,000 a month from Mission Realty and Benco Insurance, has $2,390 in monthly expenses, and has only $4,000 in bank accounts and $300 in personal property. Though adding the spousal support award to Husband's monthly expenses exceeds his average income by $140, the trial court also found that Husband has "assets that were neglected to be listed." As discussed above, those assets include a commercial building he purchased for $78,000 twenty years ago and proceeds from real estate sales Husband deposited in business accounts. We cannot conclude, in the face of this evidence, that the superior court abused its discretion in finding Husband had the ability to pay $750 a month in spousal support.

Husband claims "[t]he court simply imputed some money as basis in [its] calculation." This mischaracterizes the superior court's remark. The court indicated it "had selected [$]1,000" for spousal support at the February 10, 2014 hearing because of an "actual failure by Mr. Quan [to provide] documentation for the Court to set a realistic

12

income, and the Court simply imputed some money." At the July 31, 2015 hearing, the court used the new evidence to set a new (and lower) support amount.

Our review of the record satisfies us that the superior court considered the relevant factors under Family Code section 4320 and made findings supported by substantial evidence in the record. In any event, Husband has identified no factors the superior court failed to consider and no findings not supported by substantial evidence. He has therefore failed to carry his burden to overcome the presumption that the superior court's order was correct and to demonstrate reversible error. (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610.) We therefore conclude the trial court did not abuse its discretion in ordering Husband to pay Wife $750 a month in spousal support.

Finally, we note in his notice designating the record on appeal, Husband indicated he intended to raise on appeal the fact that the parties "had a prior notarized final settlement," and would ask this court to "review and validate the agreement." Husband apparently meant a February 7, 2013 stipulation for judgment. One of its provisions is that "[t]he petitioner and the respondent knowingly and intelligently waives [*sic*] SPOUSAL SUPPORT." At the July 31, 2015 hearing, the superior court held "the waiver of spousal support by both of you is not an enforceable waiver. There's deficiencies in that. I will not allow that to be sustained. There's inadequate advisals, things of [that] nature. There's simply a blank statement that we both waive spousal support. There's no inclusion that it be forever, things of that nature, and I don't think that's sustainable."

13

Husband did not raise this issue in his appellate briefs as a basis for reversing the superior court order, did not provide a basis in the record for us to review the superior court's determination that the settlement agreement was unenforceable, and did not cite to authority demonstrating prejudice as a result of the alleged error. Consequently, Husband has not met his burden to overcome the presumption that the superior court order is correct on this point. (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132; *McComber v. Wells*, *supra*, 72 Cal.App.4th at pp. 522-523 ["'[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' [Citation.] Although [appellant] is representing herself in this appeal she is not entitled to special treatment and is required to follow the rules"]; Cal. Rules of Court, rule 8.204(a)(1)(C).)

C. *Ineffective Assistance of Counsel*

Husband contends he received ineffective assistance of counsel in the trial court because his trial counsel "was not able to present pertinent information and/or evidence he had in his possession during the subject hearing."

This is not a proper basis for overturning the superior court order. "[T]he general rule is that there is no due process right to counsel in civil cases. [Citation.] Generally speaking, the right to counsel has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation." (*Walker v. State Bar* (1989) 49 Cal.3d

14

1107, 1116.) This principle extends to marriage dissolution disputes. (*In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1575.)

In any event, as we have discussed above, the record establishes that the superior court reviewed and based its ruling on the expert financial report, which is the only evidence Husband claims his attorney failed to submit to the superior court. Consequently, Husband has identified no basis for finding ineffective assistance of counsel.

## III

## DISPOSITION

We affirm the judgment. Wife shall recover her costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH _____
                                                        J.

We concur:

McKINSTER _____
            Acting P. J.

CODRINGTON _____
            J.

15